## Case No. 17,086.

### WALKER et al. v. SMITH.

[1 Wash. C. C. 152; [1] 4 Dall. 389.]

Circuit Court, D. Pennsylvania. Oct. Term, 1804.

PRINCIPAL AND AGENT — GRATUITOUS SERVICES — VINDICTIVE DAMAGES—PROVINCE OF COURT AND JURY.

1. No man can compel another to render him acts of friendship, or service, of any kind whatsoever. gratuitously, or with a view to compensation. But if the person applied to consents to render the service, and undertakes the business, he is bound to act in conformity · to the terms on which the request was made.

[Cited in brief in Chamberlain v. Parker, 45 N. Y. 571.]

2. In commercial agencies, this rule should be strictly enforced.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

3. The relinquishment of commission on an agency, does not release from the effects of negligence.

4. An agent who does not comply with his instructions, is liable for the loss occasioned thereby, although the services were gratuitously rendered.

[Cited in brief in Crump v. U. S. Mining Co., 7 Grat. (Va.) 366.]

5. In suits for vindictive damages, the jury have the right to decide on the amount, without the control of the court; but where they are extravagant, the court will interfere. But in other cases, where a rule can be discovered, the jury are bound to follow it; and where a sum of money has been lost to the plaintiff by the negligence of the defendant, the amount of damages which a jury can give, is the sum the plaintiff has been thus deprived of, and no more.

[Cited in Jolly v. Blanchard. Case No. 7,-438.]

[Distinguished in Pegram v. Stortz, 31 W. Va. 246, 6 S. E. 499. Cited in brief in Seely v. Alden, 61 Pa. St. 304; Woodbury v. District of Columbia, 5 Mackey, 129.]

The plaintiffs, merchants in London, having been applied to by a Mr. Brown of Philadelphia, for a parcel of goods, and doubting his solidity, were introduced by the mutual friend of the plaintiff and defendant, to the defendant [Robert Smith]; and on this introduction, they sent the goods to him, and in a letter, stating their apprehensions of Brown, requested him to receive the goods, but not to deliver them to Brown, without payment for the amount being received, or such security given, as the defendant should approve; and in case neither was done, he, the defendant, was to dispose of them for account of plaintiffs. The defendant received the goods, and delivered them to Brown, without receiving payment or security. Brown afterwards failed; and by a compromise, part of the debt was received, and remitted to the plaintiffs; and this action was brought to recover the balance. In the account forwarded by the defendant, to the plaintiffs, after the failure of Brown, and the compromise, no commissions are charged.

Ingersoll, for defendant, contended, that a discretion was given the defendant to take security or not; that he acted for the best, without a view to any compensation whatever; and having himself trusted Brown, he had done for plaintiffs, as he would have done for himself. He therefore argued, that the plaintiffs were not entitled to recover at all. But if they were, he insisted, that it was in the discretion of the jury to find such damage, less than the loss sustained by the plaintiffs, as they might think right; taking into consideration all the favourable circumstances which attended the defendant's case. He cited [Purviance v. Angus] 1 Dall. [1 U. S.] 180; 2 Wils. 328; 2 Bac. Abr. 266; Bull. 156; 1 Esp. 179.

[For the plaintiffs, J. Sergeant and Dallas contended:

[1st. That although the defendant was not obliged to accept the consignment, yet, if he did accept it, he was answerable, like every other agent, or factor, for a breach of the positive orders of his principal. 1 Beaw. Lex. Merc. 44, 46; Moll. 493, 497; 4 Com. Dig. 227, 228; 2 Ch. Cas. 57; 4 Rob. 218; 1 Marsh. Ins. 206, 207, 209, 210.

[2d. That although the jury has a great and useful latitude in cases of tort, and mixed cases of negligence and tort, where no precise standard of damages was established, the legal discretion of a jury, could indulge in no capricious, or conjectural, estimate, in cases of contract, express, or implied, where a mere calculation of figures furnishes a certain and uniform standard of right. 2 Wm. Bl. 942; 4 Term R. 654, 655; 5 Term R. 255; Barnes, Notes Cas. 455, 448; 1 Strange, 425.

[3d. That, on these principles, the defendant was liable for the debt, as if he were a purchaser of the goods; and every purchaser is chargeable with interest, after the usual term of credit is expired [Henry v. Risk] 1 Dall. [1 U. S.] 265; Doug. 361; 2 Bos. & P. 337; U. S. v. Willing [Case No. 16,727].[2]

WASHINGTON, Circuit Justice (charging jury). This is a short and perfectly clear case. The facts are few, and agreed between the parties. It is my duty to state to you the law, and to apply it to the case. The principles of law, as applied to the duties and obligations of agents, have been correctly stated by the plaintiffs' counsel. No man can compel another to render him acts of friendship, or services of any kind, whether gratuitously, or with a view to a remuneration. But, if the person applied to, consents to render the service, and undertakes the business, he is bound to act in conformity to the terms on which the request was made. This rule is universal in its application, whatever may be the situations or professions of the parties; but, in commercial agencies, it is of great consequence, that it should be rigidly enforced. The defendant, by receiving the goods, and undertaking to act concerning them, bound himself to hold them, until paid for, or secured by Brown; and on his failure to do either, to dispose of them for account of the plaintiffs. But what has he done? He delivered them to Brown, without receiving payment or security; he did the very thing he was cautioned not to do. The discretion which the defendant had, was confined to the kind of security to be taken, and did not leave him at liberty to take security; or deliver the goods without any, as he might think proper. Had he taken security, which afterwards became insufficient, he would have been excused; provided he acted with that caution and prudence, which he would have observed in his own case. The defendant, by the very nature of the transaction, was entitled to a commission, as certainly as if the plaintiffs had promised it; and his relinquishing this compensation, after the loss had taken place,

cannot alter the case. Indeed, he would have been liable, if it had been undertaken gratuitously. There was no ambiguity in the plaintiff's letter upon the subject; and therefore, the defendant is without excuse, and has taken upon himself to answer for the loss. He has made himself a guarantee of the debt.

The next question is, as to the damages? I admit the principle, that in cases sounding in damages, the amount of those damages depends upon the sound discretion of the jury. In cases, where merely vindictive damages are sued for, the jury act without control on this subject; because there is no legal rule by which they can be measured; and unless they are so extravagant as to induce a suspicion of improper conduct, the court will not interfere. But in these cases, where a rule can be discovered; the jury are bound to adopt it. That rule is, that the plaintiff should recover so much, as will repair the injury sustained by the misconduct of the defendant; and applying this rule to the present case, what other measure of damages can be thought of, but the sum lost to the plaintiff by the violation of his orders? The sum demanded, is of no great consequence, perhaps, to either of the parties, on the score of its amount. But the question itself is important to the commercial interests of this country; in its intercourse with foreign nations. A precedent is to be set to determine in a case like this. whether an agent is liable for a breach of orders, and to what amount..

The jury found for the plaintiff; but a sum much inferior to the loss he had sustained.

[The jury, however, gave a verdict for only 468 dollars 44 cents, which was the amount of the plaintiff's demand (after crediting the remittance), estimating the sterling money at par, allowing the defendant a commission, and deducting the interest. The jury added, that the plaintiffs should pay the costs.

[The finding of the jury, that the plaintiffs should pay the costs, was, at once, abandoned by the defendant's counsel, on general principles; but Ingersoll stated, that the first judicial law provided, that the plaintiff should not be allowed costs if he recovered a sum less than 500 dollars (6 Laws U. S. 16, § 3 [1 Stat. 83]); and that although the action was instituted, when the sum required, in that respect, was only 400 dollars. yet he referred to a decision of Judge Chase's, in the circuit court of Delaware, which pronounced, that the act repealing the latter provision revived the former, and was to be applied to all suits present, or future. Dallas referred, however, to the acts of congress, 5 Laws U. S. 237, § 11; 6 Laws U. S. 16, § 4 [1 Stat. 83].. And THE COURT declared that the plaintiffs were clearly entitled to costs.

[The plaintiffs' counsel then moved for a new trial, because the verdict was against law, evidence, and the charge of the court;

but, after argument, the motion was overruled. and it was observed by Washington, Circuit Justice, that although he was not satisfied with the verdict, nor should he have assented to it as a juror, yet the question of damages, or of interest in the nature of damages, belonged so peculiarly to the jury, that he could not allow himself to invade their province; while he felt a determination to prevent. on their part, any invasion of the judicial province of the court.] [3]

[See Case No. 17,087.]

[NOTE. This case as reported in 4 Dall. (4 U. S.) 389. contains the following statement of facts: "The plaintiffs were merchants of London; and in March, 1796, shipped and consigned to the defendant certain goods, invoiced at £270 14s. 8d. sterling, accompanied with a letter, stating that 'these goods were shipped by order of Mr. J. B. and for his account; and he was to remit us the amount on his arrival at Philadelphia; but since they were shipped. some circumstances have occurred, which have created some doubts, in our minds, respecting his solidity;. and by the advice of our friends, we have adopted this method to secure ourselves through your friendly assistance, which we request on this occasion. As we do not want to deprive B. of the benefits to be derived from the sale of these goods, we wish you to hold them at his disposal, but not to deliver them to him, without being paid for the amount, or having such security given you therefor. as is satisfactory to yourself. Should he not be able to effect either of these, in a reasonable time we would wish you to dispose of them for our account, and remit us the. amount in good bills.' The defendant duly received the goods, but delivered them over to B. without receiving payment. or exacting security; and shortly afterwards B. failed. The defendant, however, representing other creditors of B., as well as the plaintiffs, made a composition, by which he received for the proportion of the plaintiffs £151. 16s. sterling, and remitted that sum to them, without charging commissions. in a letter dated the 11th of December. 1800. The plaintiffs refused to ratify the composition, and brought the present suit to recover the invoice value of the goods, with interest according to the usage of trade."]